RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0287p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

GLOBAL TECHNOLOGY, INC., a Michigan Corporation,

*Plaintiff-Appellee,*

*v.*

YUBEI (XINXIANG) POWER STEERING SYSTEM CO., LTD., et al.,

*Defendants,*

AVIATION INDUSTRY CORPORATION OF CHINA, a People's Republic of China Corporation,

*Defendant-Appellant.*

No. 14-2319

———————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:12-cv-11144—Stephen J. Murphy III, District Judge.

Argued: July 29, 2015

Decided and Filed: December 7, 2015

Before: BATCHELDER, GIBBONS, and WHITE, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Paul D. Hudson, MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., Troy, Michigan, for Appellant. Victoria A. Valentine, VALENTINE & ASSOCIATES, P.C., West Bloomfield, Michigan, for Appellee. **ON BRIEF:** Paul D. Hudson, Matthew P. Allen, Conor T. Fitzpatrick, MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., Troy, Michigan, for Appellant. Victoria A. Valentine, Stephen K. Valentine, VALENTINE & ASSOCIATES, P.C., West Bloomfield, Michigan, for Appellee.

---

**OPINION**

---

ALICE M. BATCHELDER, Circuit Judge.   Aviation Industry Corporation of China ("AVIC") brings this interlocutory appeal of the district court's denial of its motion to dismiss asserting immunity under the Foreign Sovereign Immunities Act (FSIA).  Because we conclude that AVIC's challenge to federal jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is a factual challenge rather than a facial one, we hold that the district court erred by treating it as a facial challenge and thus taking the plaintiff's factual allegations as true.  And although the parties agree on a number of important facts, there remain material factual disputes that the district court must decide in order to determine whether it has jurisdiction.  We therefore VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.

**I.**

A district court's denial of foreign sovereign immunity is immediately appealable under the collateral-order doctrine.  *O'Bryan v. Holy See*, 556 F.3d 361, 372 (6th Cir. 2009).  A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) involves either a facial attack or a factual attack.  *Am. Telecom Co., LLC v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007).  "When reviewing a facial attack, a district court takes the allegations in the complaint as true."  *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  This approach is identical to the approach used by the district court when reviewing a motion invoking Federal Rule of Civil Procedure 12(b)(6).  *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012).

When a Rule 12(b)(1) motion attacks a complaint's factual predicate, the court does not presume that the plaintiff's factual allegations are true.  *Russell v. Lundergan-Grimes,* 784 F.3d 1037, 1045 (6th Cir 2015).  As always, the party invoking federal jurisdiction has the burden to prove that jurisdiction. *See id.*  When examining a factual attack under Rule 12(b)(1), "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter

jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). For Rule 12(b)(1) factual attacks, we accept the district court's findings of fact unless the findings are clearly erroneous. *See Russell,* 784 F.3d at 1045. We review do novo the district court's legal conclusions regarding those facts. *Id.*

**II.**

AVIC claims immunity under the Foreign Sovereign Immunities Act of 1976 (FSIA), Pub. L. No. 94-583, 90 Stat. 2891 (codified as amended at 28 U.S.C. § 1602 *et seq.*). "Foreign states are generally immune from suit in United States courts." *Triple A Int'l, Inc. v. Democratic Republic of Congo*, 721 F.3d 415, 416 (6th Cir. 2013). "[F]oreign sovereign immunity is a matter of grace and comity rather than a constitutional requirement[.]" *Republic of Austria v. Altmann*, 541 U.S. 677, 689 (2004). The FSIA, "if it applies, is the sole basis for obtaining jurisdiction over a foreign state in federal court." *Samantar v. Yousuf*, 560 U.S. 305, 314 (2010) (internal quotation marks omitted). "Under the FSIA, a foreign state is presumptively immune from suit unless a specific exception applies." *Permanent Mission of India to the United Nations v. City of New York*, 551 U.S. 193, 197 (2007). The FSIA thus codifies a "general grant of immunity," then "carves out certain exceptions." *Altmann*, 541 U.S. at 691.

The federal statutory provision that potentially confers jurisdiction on the district court here provides:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of [Title 28] as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of [Title 28] or under any applicable international agreement.

28 U.S.C. § 1330(a). Section 1603(a) provides that "[a] 'foreign state' . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(a). Subsection (b) defines "an agency or instrumentality of a foreign state" as

> any entity (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the

United States as defined in section 1332(c) and (e) of this title, nor created under
the laws of any third country.

28 U.S.C. § 1603(b).  Section 1604 then provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607" of Title 28 or as mandated by any international agreement to which the United States is a party.

The FSIA "establishes a comprehensive framework for determining whether a court in this country . . . may exercise jurisdiction over a foreign state." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 610 (1992).  A state-owned corporation can invoke certain protections under the FSIA if it is an instrumentality of a foreign nation.  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 470, 473 (2003).  We employ a burden-shifting approach in FSIA cases where the named defendant is not a sovereign state.  *See O'Bryan*, 556 F.3d. at 376.

Ordinarily, the defendant bears the burden of claiming its status as a foreign state, *see id.*, but here, the parties agree that AVIC is a foreign state for purposes of the FSIA.  AVIC is therefore presumed to be immune from suit, and the burden of production shifts to the plaintiff to rebut this presumption by showing that an enumerated exception applies.  If the plaintiff succeeds, the burden shifts to AVIC to demonstrate that its actions do not satisfy the claimed exception.  *Id.*  "The party claiming immunity under FSIA retains the burden of persuasion throughout this process." *Id.*; *accord Peterson v. Islamic Republic Of Iran*, 627 F.3d 1117, 1125 (9th Cir. 2010); *Orient Mineral Co. v. Bank of China*, 506 F.3d 980, 991-92 (10th Cir. 2007); *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir.1993); *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992).  In short, whether the district court here has jurisdiction "depends on the existence of one of the specified exceptions to foreign sovereign immunity." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983).

The "most significant of the FSIA's exceptions," *Weltover*, 504 U.S. at 611, and the exception relevant here, provides that a foreign state is not immune when a suit:

is based [1] upon a commercial activity carried on in the United States by the
foreign state; or [2] upon an act performed in the United States in connection with
a commercial activity of the foreign state elsewhere; or [3] upon an act outside the

territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

"A commercial activity carried on in the United States by a foreign state" is defined as "commercial activity carried on by such state and having substantial contact with the United States." 28 U.S.C. § 1603(e). And "[a] 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* § 1603(d).

Under the FSIA's commercial activity exception, a foreign nation "is immune from the jurisdiction of foreign courts as to its sovereign or public acts (*jure imperii*), but not as to those that are private or commercial in character (*jure gestionis*)." *Saudi Arabia v. Nelson*, 507 U.S. 349, 359-60 (1993). Such commercial activity is that involving "only those powers that can also be exercised by private citizens" in contrast to "powers peculiar to sovereigns." *Weltover*, 504 U.S. at 614 (internal quotation marks omitted). The rule is that "when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." *Id.* These actions are assessed in terms of the types of actions by which private actors participate in the marketplace. The motive or purpose of the state-owned actor—that is, whether it was acting pursuant to a private corporate motive (e.g., profit-seeking) as opposed to a governmental motive (e.g., regulating the economy)—is not determinative. *Id.*

A lawsuit claiming jurisdiction under the first clause of the commercial exception must be "based upon a commercial activity carried on in the United States by the foreign state," 28 U.S.C. § 1605(a)(2). This is activity that is "either a regular course of commercial conduct or a particular commercial transaction or act," *id.* § 1603(d), and that rises to the level of constituting "substantial contact with the United States," *id.* § 1603(e). Jurisdiction exists only if the actions cited as a cause of action are commercial in nature. *See Millen Indus., Inc. v. Coordination Council for N. Am. Affairs*, 855 F.2d 879, 885 (D.C. Cir. 1988). "[B]ased upon" in § 1605(a)(2) "mean[s] those elements of a claim that, if proven, would entitle a plaintiff to relief

under his theory of the case." *Nelson*, 507 U.S. at 357. The commercial activity relied upon by a plaintiff for jurisdictional purposes must be directly connected to the activity for which the plaintiff brings suit. *Id.* at 358.

### III.

AVIC's claim here is that under the FSIA, the true facts of the case deprive the federal judiciary of subject-matter jurisdiction. This is a factual attack on the complaint. The district court has not yet established the jurisdictional facts of this case. On this much, however, the parties clearly agree:

The People's Republic of China ("PRC") owns AVIC. The company has a business license for both military products and "general business items," including automobile parts. AVIC's business license shows a stamp of the official seal of the State Administration for Industry and Commerce of the People's Republic of China, and the license states that AVIC is "Owned by the Whole People." AVIC is a Fortune 500 company, with over 400,000 employees and $23 billion in annual revenue, directly owned by China's State Council (the chief administrative authority of the Chinese central government). The State Council's State-Owned Assets Supervision and Administration Commission supervises and manages the state-owned assets of enterprises like AVIC.

Yubei Power Steering System Co., Ltd., ("Yubei") is a Chinese automotive company that manufactures automobile equipment. Yubei is one of nearly 200 AVIC subsidiaries. A subsidiary of a subsidiary of a subsidiary of AVIC owns at least a minority stake (49%) in Yubei.[1] Global Technology, Inc. ("GTI") is an American corporation headquartered in Michigan, and serves as a sales representative and consultant for manufacturing companies in the United States and abroad, including acting as the sales representative for Yubei in the United States.

In 2008, GTI undertook to pursue an alliance between Yubei, AVIC, and Delphi Corporation's Global Steering Division ("Delphi"), another Michigan company. In September

---

[1]We note that another document refers to Yubei as a "wholly owned subsidiary" of AVIC. The extent of AVIC's ownership stake in Yubei is one of the factual questions that must be resolved on remand.

2009, Yubei's president wrote to Delphi's president to express Yubei's desire to purchase Delphi. The letter explained that Yubei is a subsidiary of AVIC and touted AVIC's "significant industrial strength." However, General Motors (GM)—yet another Michigan company—ultimately purchased Delphi and renamed the company "Nexteer."

When GTI then attempted to buy the renamed Nexteer, GM expressed concern that another company claimed to have AVIC's support in the Nexteer acquisition. AVIC executive Wang Jian later met representatives from GM, Yubei, and GTI in Michigan. At this meeting, Wang Jian offered $350 million to General Motors to acquire Nexteer. That offer was not accepted. In 2010, General Motors sold Nexteer to Pacific Century Motors, also a Chinese company, for $450 million. In 2011, AVIC Auto—another subsidiary of AVIC—purchased fifty-one percent of Pacific Century's shares, giving AVIC Auto control of Pacific Century and Nexteer.

On March 14, 2012, GTI filed suit against Yubei, AVIC, and AVIC Auto in the Eastern District of Michigan[2] alleging that AVIC orchestrated this series of events to avoid its financial obligations to GTI by creating AVIC Auto to "independently" buy Nexteer. GTI filed an amended complaint in October 2012, bringing a claim against Yubei for breach of contract, and claims against all defendants for promissory estoppel and unjust enrichment. The defendants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The district court granted AVIC Auto's motion to dismiss, but denied the Rule 12(b)(6) motions filed by Yubei and AVIC.

AVIC filed a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) on sovereign immunity grounds, claiming that GTI failed to show that AVIC's actions fell within the Foreign Sovereign Immunities Act's "commercial activity" exception. GTI responded with documents purportedly showing that AVIC's actions do fall within the "commercial activity" exception. The district court denied AVIC's Rule 12(b)(1) motion. This timely appeal followed.

---

[2]GTI also sued another company, Tempo, but the district court dismissed this claim by stipulation and without prejudice.

"[S]ince entitlement of a party to immunity from suit is such a critical preliminary determination, the parties have the responsibility, and must be afforded a fair opportunity, to define issues of fact and law, and to submit evidence necessary to the resolution of the issues." *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988). In an FSIA case, "[w]hen the defendant has thus challenged the factual basis of the court's jurisdiction, the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant." *Phx. Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).

Because the court's jurisdiction is at issue, the trial court has "substantial authority" at the pleadings stage to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (internal quotation marks and emphasis omitted). District courts have "wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Gentek*, 491 F.3d at 330. However, a district court should not weigh the evidence if the facts necessary to sustain jurisdiction implicate the merits of the plaintiff's claim. *Id.* If "an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should '*find that jurisdiction exists* and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" *Id.* (internal quotation marks and citation omitted). A district court has "considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *Foremost-McKesson, Inc. v. Islamic Republic of Iran,* 905 F.2d 438, 449 (D.C. Cir. 1990) (internal quotation marks omitted). Courts must look past artful pleading to determine the underlying reality of the core activities being challenged, to determine if the gravamen of the complaint truly falls within one of the exceptions Congress wrote into the FSIA. *O'Bryan*, 556 F.3d at 380. The district court here has broad discretion in shaping the course of factual development, but does not have discretion not to develop those facts.

## IV.

Many of GTI's allegations involve Yubei personnel. GTI argues that AVIC controls Yubei's actions here, while AVIC insists that Yubei makes its own decisions. So in examining whether GTI overcomes AVIC's presumption of immunity, the district court must determine

which—if any—of the complained-of actions are legally attributable to AVIC, or, instead, if those actions are legally attributable to Yubei only. This circuit has no controlling authority for piercing the corporate veil when considering claims under the FSIA. Lacking guidance from the Supreme Court, other courts of appeals have fashioned their own rules. *See, e.g.*, *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 848–49 (D.C. Cir. 2000); *Foremost-McKesson,* 905 F.2d at 447–48.

Once the district court decides which acts are legally attributable to AVIC, it must determine whether those acts satisfy the commercial activity exception. The parties agree that AVIC is an instrumentality of the Chinese government. So upon remand GTI bears the burden of production, which here means providing facts supporting that AVIC engaged in commercial activity. If GTI makes that showing, then the burden shifts back to AVIC, which must be afforded the opportunity to explain why its actions are not the sort of private commercial activities that a private corporation would perform in the competitive marketplace, as to which it bears the ultimate burden of persuasion. For example, a government's promoting its nation's business interests abroad is a legitimate governmental activity, as is providing general business development support and assistance. *Kato v. Ishihara*, 360 F.3d 106, 112 (2d Cir. 2004). The district court must develop the facts, and then determine whether AVIC's actions are commercial instead of governmental, that is, whether AVIC's actions here are those of a corporate competitor or those of a governmental regulator.

## V.

We also must consider AVIC's argument that GTI waived any claim that AVIC's actions abroad fulfill the direct-effect exception to the FSIA. AVIC's "effect is direct if it follows as an immediate consequence of the defendant's activity," and must be more than trivial. *Weltover*, 504 U.S. at 618 (internal quotation marks omitted); *see also DRFP LLC v. Republica Bolivariana De Venezuela*, 622 F.3d 513, 516–17 (6th Cir. 2010).

GTI did not waive the right to raise arguments under this exception. The amended complaint does allege that actions giving rise to this lawsuit directly affected GTI, but those allegations are directed against all Defendants here, not just AVIC. However, once AVIC claimed sovereign immunity, separate from GTI's claim against AVIC for alleged commercial

activity within the United States, GTI also claimed that AVIC's actions abroad had a direct effect in the United States.  The district court must determine whether the true facts of the case satisfy this FSIA exception as well.

## VI.

For the foregoing reasons, we VACATE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.